UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Red Wing Shoe Company, Inc., Civil No. 02-257 (DWF/AJB)

Plaintiff,

v.

B-JAYS USA, Inc.,

Defendant.

**MEMORANDUM OPINION AND ORDER**

---

Edward F. Fox, Esq., and J. Aron Allen, Esq., Oppenheimer Wolff & Donnelly, 3400 Plaza VII Building, 45 South Seventh Street, Minneapolis, MN 55402, counsel for the Plaintiff.

Richard G. Wilson, Esq., and Mary R. Vasaly, Esq., Maslon Edelman Borman & Brand, 3300 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402-4140, counsel for the Defendant.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on June 21, 2002, pursuant to Defendant's Motion to Dismiss or Transfer Venue to the United States District Court for the Southern District of New York. For the reasons set forth below, Defendant's motion is denied.

## Background

Plaintiff Red Wing Shoe Company, Inc. ("Red Wing") is a Minnesota corporation engaged in the manufacturing and distribution of footwear. Defendant B-JAYS USA, Inc. ("B-JAYS") is a New York corporation which distributes shoes and operates retail shoe stores in New York and New Jersey. The contractual relationship between the parties is set forth in greater detail in this

JUN 26 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Court's Order of April 19, 2002; for purposes of this motion, the Court will limit its recitation of facts to those relevant to the procedural posture of the litigation.

For the latter half of 2000 and most of 2001, the relationship between the parties was strained. B-JAYS complained that Red Wing was providing shoes which did not meet specifications, that the shoes were not being shipped in a timely manner, that many of the shipments were "short," and that Red Wing was over-billing B-JAYS for the shoes actually provided. For its part, Red Wing was concerned because B-JAYS was not making full and timely payments on the shipments.

To resolve the tension between the parties, the parties entered into an "Accord Agreement" in August of 2001. Under the terms of this agreement, Red Wing provided certain discounts and concessions to B-JAYS to compensate B-JAYS for problems with earlier shipments of shoes. Furthermore, B-JAYS was obligated to make certain payments in September, October, November, and December of 2001. B-JAYS made the September payments and provided Red Wing with a post-dated check for the October payment. Accordingly, Red Wing released over 15,000 pairs of shoes for shipment to B-JAYS.

However, on October 10, 2001, Red Wing attempted to cash the post-dated check from B-JAYS, a check in the amount of $463,040.75. The check was returned by the bank for insufficient funds. Red Wing contacted B-JAYS and was allegedly informed that B-JAYS did not have the money to make the October payment and did not feel that it was required to make any further payments.

On November 11, 2001, Red Wing notified B-JAYS that B-JAYS was in default of the Distributor and License Agreement between the parties. Red Wing informed B-JAYS that, pursuant to that agreement, B-JAYS had 60 days to pay all amounts past due to avoid termination

of the contract. Red Wing further indicated that it would commence legal proceedings to collect past due amounts if those amounts had not been paid.

On January 8, 2002, just before the 60-day period was due to expire, B-JAYS filed a lawsuit against Red Wing in New York, alleging that Red Wing breached the contract. Although the action was filed on January 8, and Red Wing received an unverified copy of the Complaint shortly thereafter, B-JAYS did not serve a Notice and Summons on Red Wing until Friday, January 25, 2002.

On Friday, January 25, 2002, Red Wing filed the present action alleging that B-JAYS breached the contract. Red Wing served the Summons and Complaint in this action on B-JAYS on Monday, January 28.

The matter is currently before the Court on B-JAYS's motion to dismiss or transfer venue pursuant to 28 U.S.C. § 1404(a).

**Discussion**

As a preliminary matter, the Court notes that B-JAYS's motion, to the extent that it is a motion to transfer venue pursuant to 28 U.S.C. § 1404(a), is timely. A motion to transfer venue for the convenience of parties or witnesses or in the interests of justice, brought pursuant to 28 U.S.C. § 1404(a), is not a motion under Rule 12(b)(3) of the Federal Rules of Civil Procedure, so the waiver provision of Rule 12(h) is inapplicable. *See James v. Norfolk & W. Ry. Co.*, 430 F. Supp. 1317, 1319 n.1 (S.D. Ohio 1976); Wright & Miller, Federal Practice and Procedure: Civil 2d §§ 1352 and 1386. Thus, even though B-JAYS has previously brought a motion to dismiss for lack of personal jurisdiction, B-JAYS has not waived its right to bring a statutory motion to transfer.

B-JAYS argues that the Court should give preference to B-JAYS' choice of New York as the forum for this litigation because the New York action was filed first. The Court does not agree. Under the so-called "first filed rule," when separate actions are brought in two federal courts with concurrent jurisdiction over the dispute, the first court in which jurisdiction attaches has priority to entertain the suit. *See Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985). B-JAYS concedes that jurisdiction in New York did not attach until Red Wing was formally served on January 25, 2002; jurisdiction in Minnesota attached when B-JAYS was served on January 28, 2002. For practical purposes, the actions commenced only a day apart.

Moreover, Red Wing had indicated its intention to commence litigation against B-JAYS in the letter sent to B-JAYS on November 11, 2001. In this regard, this case is strikingly similar to *Brierwood Shoe Corp. v. Sears, Roebuck & Co.*, 479 F. Supp. 563 (S.D.N.Y. 1979), in which the District Court noted that

> plaintiff behaved with propriety and observed the amenities, thereby losing the race to the courthouse by two days. Were we to give undue weight, or any weight, to the results of that race under the circumstances, we would be encouraging other litigants in future like cases to file first . . . and then inform their adversaries. Such a policy would reward Pearl Harbor tactics at the expense of the Marquis of Queensberry rules.

*Id.* at 568. While this Court is not bound by *Brierwood*, the Court finds the argument in *Brierwood* to be sound. In the case at bar, the Court is less concerned with discouraging behavior similar to B-JAYS's than with encouraging behavior similar to Red Wing's, but the result is the same. The Court will not penalize Red Wing for "losing the race" by a weekend where it did so because it provided notice of its intent to commence litigation and gave B-JAYS an opportunity to avoid litigation by performing on the contract.

In the absence of a priority based upon the first filed rule, this Court must afford considerable deference Red Wing's choice of forum. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). As such, the Supreme Court has stated that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gilbert*, 330 U.S. at 508. The Court should consider both public and private factors in deciding whether to override a plaintiff's choice of forum in favor of another forum. The private factors to be considered include: the private interest of the litigant, relative ease of access to sources of proof, availability of compulsory process for attendance of the unwilling, the cost of obtaining witnesses, the need to view the premises, the enforceability of a judgment, and "all other practical problems that make the trial of a case easy, expeditious, and inexpensive." *Gilbert*, 330 U.S. at 508. The court must also consider public factors which include: the burden of jury duty on the local community, the local interest in having the matter decided at home, congestion in courts, and the difficulty in applying foreign law. *Gilbert*, 330 U.S. at 508-9. In the case before the Court none of the factors, either public or private, weigh in favor of a transfer to New York.

With respect to the private factors, B-JAYS asserts that it will need to call 13 witnesses who are New York residents and who are not employees of B-JAYS, witnesses who may be unwilling. B-JAYS asserts that these witnesses are necessary to show that the shoes at issue were defective. The Court cannot countenance the notion that 13 witnesses will be necessary to establish the defectiveness of the shoes; indeed, the Court cannot imagine that *any* non-party witnesses will be necessary to establish such a fact. As a result, availability of compulsory process would seem to be a non-issue. Moreover, with respect to all other cost and convenience issues, moving the case to New York will simply shift the burden of inconvenience from B-JAYS to Red Wing. Finally, with respect to the issue of expediency, this Court has no backlog whatsoever

and could reach this case as soon as the parties were ready; the Court does not know anything about the docket of the New York court, but given this Court's current situation, there is little likelihood that the New York court is better situated to expedite this case.

With respect to the public factors, again, they do not weigh heavily in favor of either party. Either court could apply the appropriate law; Minnesota's courts are not so congested as to favor transfer; the burden of a jury trial is not so great in Minnesota as to favor transfer; and New York has no greater interest in resolving the dispute than does Minnesota.

Given that none of the relevant factors weighs heavily in favor of transferring the case to New York, the Court finds that B-JAYS has not met its burden, and the Court will not upset Red Wing's choice of forum. Accordingly, Defendant's motion is denied.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Defendant B-JAYS USA, Inc.'s Motion to Dismiss or Transfer Venue (Doc. No. 21) is **DENIED**.

Dated: June 26, 2002

DONOVAN W. FRANK
Judge of United States District Court